1  MICHAEL ZORKIN (Bar No. CA 313308)
   THE ZORKIN FIRM
2  Email: mz@thezorkinfirm.com
   6320 Canoga Ave., 15th Floor
3  Woodland Hills, California 91367
   Telephone:  323.493.8075
4
   Attorneys for Plaintiff Eminent Consulting,
5  LLC

6

7

8  UNITED STATES DISTRICT COURT

9  EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| Eminent Consulting, LLC, a Tennessee limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RightSourcing, LLC, a Delaware Limited Liability Company; and Does 1-10, inclusive<br><br>Defendant.<br><br>RightSourcing, LLC f/k/a RightSourcing, Inc., a Delaware Limited Liability Company,<br><br>Counterclaimant,<br><br>v.<br><br>Eminent Consulting, LLC, a Tennessee limited liability company,<br><br>Counterdefendant. | No.  2:24-cv-02646-JAM-CSK<br><br>Hon. John A. Mendez<br><br>**AMENDED COMPLAINT FOR**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**3. BREACH OF THE IMPLIED DUTY TO PERFORM WITH REASONABLE CARE**<br><br>**4. VIOLATION OF THE UNFAIR COMPETITION LAW (B&P CODE § 17200 ET SEQ.)**<br><br>**5. PROMISSORY ESTOPPEL**<br><br>Complaint Filed: September 30, 2024 |

# I.
# JURISDICTION AND VENUE

1. Diversity jurisdiction exists under 28 U.S.C § 1332(a)(1), because Plaintiff Eminent Consulting, LLC is a Tennessee corporation with its principal place of business in Tennessee, Defendant RightSourcing, LLC is a Delaware limited liability company registered to do business in California, with its principal place of business in California, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because RightSourcing's principal place of business is in Folsom, Sacramento County, California.

3. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants, Does 1 through 10, inclusive, are unknown to Eminent, who therefore sues these Defendants by fictitious names. Eminent will amend this Complaint to show the true names and capacities of such fictitiously named Defendants once learned. Eminent is informed and believes that each of the fictitiously named Defendants was involved in some or all of the wrongful conduct alleged and that Eminent's rights against the fictitiously named Defendants arise from such conduct.

# II.
# PLAINTIFF'S ALLEGATIONS

4. During the height of the Covid pandemic, hospitals across the country struggled to retain health care professionals to meet the needs of their patients. The situation was especially dire in New York City where millions of patients needed around the clock care.

5. This is where Eminent comes in. Eminent is a staffing and recruiting company that is a go-to source of premier talent for healthcare facilities around the country. Since the start of the pandemic, Eminent provided nurses and other health

1 care professionals for New York City Health + Hospitals and the New York
2 Department of Education ("NYC entities").

3     6.    Undaunted by the difficulties of the pandemic, Eminent recruited
4 hundreds of qualified nurses to help ease the burden on eleven New York City
5 hospitals. Eminent worked day and night during the pandemic to source and
6 employ qualified nurses and other health care professionals placed at New York City
7 hospitals.

8     7.    At some point, NYC entities decided to hire health care professionals
9 through a vendor rather than contract with Eminent directly. NYC chose
10 RightSourcing as the vendor and that's when everything went wrong.

11     8.    Eminent and RightSourcing entered into several written contracts
12 referred to as Supplier Agreements. Each contract provided that RightSourcing will
13 pay Eminent for health care professionals who work at various NYC hospitals. The
14 parties also entered into written Participation Agreements, which named the NYC
15 entities as RightSourcing clients to whom Eminent provided health care staff. The
16 NYC entities are third-party beneficiaries of the contracts. The contracts are
17 governed by California law.

18     9.    From the very beginning, RightSourcing did not keep its end of the
19 bargain. Either through negligence, incompetence, or malice, RightSourcing never
20 paid at the agreed upon rates and never correctly tracked the hours worked by
21 Eminent's nurses.

22     10.    RightSourcing's breaches are twofold. First, RightSourcing has failed
23 to pay Eminent at the agreed upon bill rates. Second, RightSourcing has failed to
24 pay for all hours worked by Eminent employees. The rates RightSourcing agreed to
25 pay were not specified in the written agreements but were left to the parties'
26 negotiations. Eminent, RightSourcing, and the NYC Entities subsequently agreed
27 on the rates.

28     11.    The rates varied by health care professional. For example, Registered

Nurses were paid more per hour than Certified Nursing Assistants. The rates also varied depending on whether the professional worked regular, overtime, or holiday shifts. Further, during the Covid surge that began in December 2020, the parties agreed on higher rates and guaranteed minimum number of shifts and hours. Once the surge subsided, the rates went back to pre-surge levels.

12. Over the life of the contracts, the rates varied between $34 per hour and up to $477 per hour for overtime pay. During the Covid surge, the parties agreed to a $212 per hour blended rate for all professionals and a $318 per hour holiday rate.

13. Despite the parties' agreement on rates, RightSourcing has failed to pay as agreed. Eminent is informed and believes that the underpayments were partly caused by RightSourcing's failure to upload the correct rates into its timekeeping database. Eminent has no control over the timekeeping database and could not correct the rates. Eminent has repeatedly disputed the bill rates applied to its workers, but RightSourcing has failed to correct the problem and failed to make good on its promises. RightSourcing now owes Eminent almost $19 million because of the difference in the agreed upon rates and the rates actually paid by RightSourcing.

14. RightSourcing has also failed to pay for all hours worked by Eminent employees. Eminent employees worked (and were paid by Eminent) more hours than were paid by RightSourcing. What is more, during the Covid surge, RightSourcing guaranteed six shifts and sixty-nine minimum hours for Eminent employees but has failed to pay Eminent for those hours. RightSourcing now owes Eminent almost $1 million because of the variance in the number of hours worked by Eminent employees and hours paid.[1]

---

[1] Eminent has provided to RightSourcing a spreadsheet with the details of the underpayments, including the workers' names, dates, rates, and hours worked. Eminent expects to learn the exact figures during discovery as it has no access to RightSourcing's timekeeping systems.

15. Eminent continued to pay its nurses at the right rates and for the right number of hours, despite RightSourcing's breaches.

16. In addition, RightSourcing owes more than $6 million in foreseeable consequential damages resulting from various costs incurred by Eminent caused by RightSourcing's continuous failure to properly pay Eminent. As an example, Eminent incurred significant fees to obtain financing to meet its payroll obligations amid the Covid pandemic. RightSourcing caused these damages by its breaches and underpayments and must pay for all foreseeable damages caused.

17. Eminent must be paid for its valuable, life-saving services. Despite repeated demands, RightSourcing has failed to perform its end of the bargain.

## III.
## PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

18. Eminent incorporates by reference the allegations in Paragraphs 1-17 as though set forth in full below.

19. As described above, Eminent and RightSourcing entered into a series of written contracts providing, in material part, that Eminent would supply the NYC Entities with health care professionals and RightSourcing would pay Eminent at agreed upon rates.

20. Eminent performed its side of the bargain by providing health care professionals to eleven New York City hospitals at the height of the Covid-19 pandemic.

21. RightSourcing breached the contract by failing to pay at agreed upon rates and failing to pay for the actual hours worked by Eminent staff.

22. Eminent was harmed by RightSourcing's conduct in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

23. Eminent incorporates by reference the allegations in Paragraphs 1-22 as though set forth in full below.

24. In every contract there is an implied promise of good faith and fair dealing. This implied promise means that each party will do nothing to unfairly interfere with the right of any other party to receive the benefits of the contract.

25. As described above, Eminent and RightSourcing entered into a series of written contracts providing, in material part, that Eminent would supply the NYC Entities with health care professionals and RightSourcing would pay Eminent at agreed upon rates.

26. Eminent performed its side of the bargain by providing health care professionals to eleven New York City hospitals at the height of the Covid-19 pandemic.

27. RightSourcing has prevented Eminent from receiving the benefits under the contract by failing to maintain and update its payment and timekeeping system resulting in significant underpayments to Eminent. Further, Eminent is informed and believes that RightSouring has unreasonably and without cause withheld funds transferred to it by NYC entities to pay Eminent.

28. Eminent was harmed by RightSourcing's conduct in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## BREACH OF THE IMPLIED DUTY TO PERFORM WITH REASONABLE CARE

29. Eminent incorporates by reference the allegations in Paragraphs 1-28 as though set forth in full below.

30. In every contract there is an implied duty to perform the contract competently and with reasonable care.

31. As described above, Eminent and RightSourcing entered into a series of written contracts providing, in material part, that Eminent would supply the NYC Entities with health care professionals and RightSourcing would pay Eminent at agreed upon rates.

32. Eminent performed its side of the bargain by providing health care professionals to eleven New York City hospitals at the height of the Covid-19 pandemic.

33. RightSourcing has failed to act competently and with reasonable care by failing to maintain and update its payment and timekeeping system resulting in significant underpayments to Eminent.

34. Eminent was harmed by RightSourcing's conduct in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE UNFAIR COMPETITION LAW (B&P CODE § 17200 ET SEQ)**

35. Eminent incorporates by reference the allegations in Paragraphs 1-34 as though set forth in full below.

36. Under California Business and Professions Code section 17203, any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court. The court may make orders or judgments to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

37. RightSourcing's conduct constitutes unfair competition under California Business and Professions Code Section 17200, which includes, "any unlawful, unfair, or fraudulent business act or practice."

38. As described above, RightSourcing's actions are unfair because it exploited the fact that Eminent had no control over the payment and timekeeping



system, and either intentionally or negligently failed to load correct billing rates and correct hours worked by Eminent staff causing millions in losses to Eminent.

39. As a result of RightSourcing's conduct, Eminent has suffered a concrete injury in fact in the form of monetary losses and losing the benefit of its bargain with RightSourcing.

## FIFTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

40. Eminent incorporates by reference the allegations in Paragraphs 1-39 as though set forth in full below.

41. As described above, RightSourcing promised that it would pay Eminent at agreed upon rates and for agreed upon number of hours worked.

42. RightSourcing intended to and did induce Eminent to provide services based on RightSourcing's representations and promises.

43. Eminent reasonably relied on RightSourcing's promises and provided services expecting to be paid at the promised rates and for promised number of hours worked.

44. RightSourcing did not pay at the promised rates and for the promised number of hours.

45. Eminent was harmed by RightSourcing's conduct in an amount to be proven at trial. Injustice can be avoided only by enforcing RightSourcing's promises to Eminent.

46. This cause of action is pled in the alternative to Eminent's contract based causes of action.

## IV.
## PRAYER FOR RELIEF

Eminent prays for judgment against RightSourcing as follows:

1. Compensatory damages in an amount to be proven at trial but not less than this Court's jurisdictional limit;

2. Foreseeable special damages proximately caused by RightSourcing in an amount to be proven at trial but not less than this Court's jurisdictional limit;

3. For restitution;

4. For an accounting;

5. For costs of suit;

6. For prejudgment interest;

7. For any other relief available at law or equity; and

8. For such other further relief as the Court may deem just and proper.

## V.
## JURY DEMAND

Eminent requests a trial by jury on all causes so triable.

Dated: February 18, 2025          THE ZORKIN FIRM


By:/s/ Michael Zorkin
Michael Zorkin
Attorneys for Plaintiff Eminent Consulting, LLC